IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| CLASSEN IMMUNOTHERAPIES, INC., | * | |
| | * | |
| Plaintiff, | * | |
| v. | | CIVIL NO.: WDQ-04-3521 |
| | * | |
| KING PHARMACEUTICALS, INC., et al., | * | |
| | * | |
| Defendants. | * | |

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION AND ORDER

Classen Immunotherapies, Inc. ("Classen") sued King
Pharmaceuticals, Inc. ("King"), Elan Corporation, PLC, and Elan
Pharmaceuticals, Inc. ("Elan") for patent infringement.  Elan and
King have counterclaimed alleging noninfringement and
unenforceability of Classen's patents.  Pending are: 1) King's
motion for summary judgment; 2) Elan's motion for partial summary
judgment; 3) Elan's motion to amend its answer; 4) Elan's motion
to file a supplemental reply in support of its motion to amend
its answer; and 5) King and Elan's motions to bifurcate.

For the following reasons, King's motion for summary
judgment will be granted; King's motion to bifurcate will be
denied; Elan's motion for partial summary judgment will be
denied; Elan's motion to file a supplemental reply in support of
its motion to amend its answer will be granted; Elan's motion to
amend its answer will be granted; and Elan's motion to bifurcate

1

will be denied.

I.  Background

Classen Immunotherapies, Inc. ("Classen") is a Maryland corporation that has developed and patented methods for identifying and commercializing new uses of existing drugs. Complaint, p. 1.  Classen is the holder of Patents 6,219,674 B1, "System for Creating and Managing Proprietary Product Data" (the "674 patent"), and 6,584,472 B2, "Method, System and Article for Creating and Managing Proprietary Product Data" (the "472 patent").  *Id.*  The 674 patent was issued on April 17, 2001.  The 472 patent was issued on June 23, 2004.  *Id.*

Classen alleges that King and Elan infringed the 674 and 472 patents in their development and sale of the muscle relaxant Skelaxin.  *Id* at 3.  King acquired Skelaxin from Elan in June, 2003 and is now solely responsible for its manufacture, marketing and sale.  Plaintiff's Opposition, p. 8.  Classen has not alleged that King was involved in the research and development of Skelaxin.

II.  King's Motion for Summary Judgment

King has moved for summary judgment arguing that the 17 patent claims that Classen alleges King infringes are all dependent claims and that Classen has failed to establish that

King infringed any independent claims.  Classen responds that: 1) King directly infringes the 674 and 472 patents under 35 U.S.C. § 271(g) by selling a product made by a patented method; and 2) that King infringes the Classen patents under the doctrine of joint infringement.

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The court will view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Classen has alleged that King has infringed claims 45, 46, 60 and 61 of the 674 patent and claims 52, 54, 55, 59, 61, 78, 80, 82, 84, 116, 118, 119, and 120 of the 472 patent. Plaintiff's Responses to King's First Set of Interrogatories, No. 2.  These claims are dependent claims; reflecting that King did not participate in the research and development of Skelaxin.  674 patent at Col. 15-16; 472 patent at Col. 27-30,32.

Claims 45 and 46 of the 674 patent are dependent on Claim 15.  674 patent at Col. 15.  Claims 60 and 61 of the 674 are

dependent on Claim 47.  674 patent at Col. 16.  Classen alleges that King violated one element of Claim 15 by commercializing new uses for Skelaxin.  Claim Chart, Claim 15.  Classen has neither alleged nor provided evidence that King violated any element of Claim 47.

Claims 52, 54, 55, 59, 61, 118, and 119 of the 472 patent are dependent on Claim 33.  472 patent at Col. 27-28,32.  Claims 78, 80, 82, 84, 116, and 120 are dependent on Claim 62.  472 patent at Col. 29-30,32.  Classen alleges that King violated one element of Claim 33 by commercializing new uses of Skelaxin, but has neither alleged nor provided evidence that King violated any element of Claim 62.

Dependent claims cannot be infringed unless the claims on which they depend are found to be infringed. *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1299 (Fed. Cir. 2002); *Wolverine World Wide, Inc., v. Nike, Inc.,* 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1553 (Fed. Cir. 1989).  Absent evidence that King infringed Claims 15 and 47 of the 674 patent and Claims 33 and 62 of the 472 patent, King cannot be found to have infringed claims 45, 46, 60 and 61 of the 674 patent and claims 52, 54, 55, 59, 61, 78, 80, 82, 84, 116, 118, 119, and 120 of the 472 patent.

A.   Infringement under 35 U.S.C. § 271(g)

Classen argues that whether King infringed dependent or independent claims, King infringed the 674 and 472 patents under 35 U.S.C. § 271(g).  Section 271(g) provides that the party who "sells or uses within the United States a product which is *made by a process patented in the United States* shall be liable as an infringer."  Classen argues that because King is selling a product created using Classen's patented method, King is liable for infringement under § 271(g).

To be considered "made by a process patented in the United States," the patented process must be used directly in the manufacture of the product, and not merely as a means to identify the product to be manufactured.  *Bayer v. Housey,* 340 F.3d 1367, 1378 (Fed. Cir 2003).  The identification and generation of data are not steps in the manufacture of a final drug product for the purposes of § 271(g).  *Id* at 1377.  Therefore, a drug created "using the claimed research processes...is not a product made by those claimed processes."  *Id* at 1378.

Classen accuses King of infringing the 674 and 472 patents by selling a product that was created using the patented method, Plaintiff's Reply pp. 5-7, but has not produced evidence that Skelaxin is manufactured using a method patented by Classen. Therefore, Classen's claim for patent infringement under § 271(g) fails for lack of evidence.

B.  Joint Infringement

Classen argues that although King has infringed only one element of Claims 15 and 33 (in both cases the commercialization of Skelaxin), Elan performed the other elements of both claims. Therefore, Classen argues, the combined actions of Elan and King satisfy every element of both claims.

A party may be liable for infringement even when certain steps of the patented process are performed by a different party. *Marley v. Mikron,* 66 U.S.P.Q.2d 1701 (N.D. Ill. 2003); *Faroudja Laboratories v. Dwin Electronics, Inc.,* 1999 WL 111788, slip op. (N.D. Ca. 1999); *E.I. Dupont De Nemours & Co. v. Monsanto Co.,* 903 F. Supp. 80 (D. Del. 1995); *FMC Corp. v. Up-Right, Inc.,* 816 F.Supp. 1455 (N.D. Ca. 1993); S*shields v. Haliburton,* 493 F. Supp. 1376.  However, there must be some connection between the entities performing the steps of the patent.  *Mikron,* 66 U.S.P.Q.2d at 1703 (connection found when Mikron contracted another party to perform the first step of a patented process and there was some indication that the third party was controlled by Mikron); *Faroudja,* 1999 WL 111788 (no connection when users of defendant's product had no control over earlier steps of patented process); *Monsanto,* 903 F. Supp. 80 (connection found when defendant contracted another party to complete the first step of a three step process); *FMC,* 816 F.Supp. 1455 (connection found when defendants worked together in performing the patented

6

process).

King purchased Skelaxin from Elan in May 2003.  Goldman
Affidavit, p. 2.  Plaintiff's Opposition, p. 8.  Under the terms
of the sale, King paid Elan $775 million and agreed to pay
royalties of five percent of net sales through December 2005 and
ten percent of net sales in excess of $50 million annually
thereafter.  Elan's 2002 Annual Report and Form 20-F.  Classen
has not produced evidence that King helped develop Skelaxin.

That the Elan and King agreement requires ongoing royalty
payments does not support a finding of joint infringement.  There
is no evidence that King controlled Elan or that the two
companies cooperated in the development and commercialization of
Skelaxin.  As the only connection between the two parties is the
sale of a product developed before the sale, King and Elan are
not joint infringers.

As, Classen has not produced evidence that King performed
every element of any independent claim, King cannot be found to
have infringed any dependent claim.  Accordingly, Classen's
motion for summary judgment will be granted.

III.  Elan's Motion for Partial Summary Judgment

Elan has moved for partial summary judgment arguing that: 1)
Elan is not liable for infringement of the 674 patent after it
sold the rights to Skelaxin in May 2003; and 2) Elan is not

liable for infringement of the 472 patent because the patent was issued after the rights to Skelaxin had been sold.  Classen argues in response that: 1) Elan continues to receive royalties for Skelaxin and, therefore, continues to infringe the 674 patent; and 2) although the 472 patent was not *issued* before Elan sold the rights to Skelaxin, the patent application was *published* before the sale and, therefore, Classen may recover for Elan's infringement under 35 U.S.C. § 154.

A.  Infringement of the 674 Patent

Under Rule 56 a party is not entitled to summary judgment if the judgment would not be dispositive of an entire claim. *Felix v. Sun Microsystems,* 2004 WL 911303, slip. op. (D.Md. 2004).  Classen has brought two claims against Elan; one for infringement of the 674 patent and one for infringement of the 472 patent.

As noted above, Elan sold King the rights to Skelaxin on May 19, 2003.  Elrod Affidavit, p. 1.  This sale included all Skelaxin patent rights, marketing materials, books and records, inventory, product registration (New Drug Registration and all supplements), copyrights, trademarks, governmental permits and know-how.  *Id* at 1-2.  Elan is no longer involved in the development, sale or marketing of Skelaxin.  Goldman Affidavit, p. 2.  Under the terms of the sale, however, Elan will receive five percent of net sales of Skelaxin through December 31, 2005

and ten percent of net sales over $50 million annually until 2021.  Elan's 2002 Annual Report and Form 20-F.

Classen concedes that Elan sold Skelaxin to King in 2003, but argues that Elan continues to "commercialize" Skelaxin through its licensing agreement with King.[1]  Plaint. Opp. to Elan's Mot. for Summary Judgment, p. 10.

A license grants the licensee the authority to make a patented product or employ a patented method.  *Jim Arnold Corp. v. Hyrdotech Systems, Inc.,* 109 F.3d 1567, 1577 (Fed. Cir. 1997); *United States v. Studiengesellschaft Kohle, m.b.H,* 670 F.2d 1122, 1129 (D.C. Cir. 1981).  A licensing agreement does not, however, transfer patent title to the licensee.  *Jim Arnold,* 109 F.3d at 1577.

A patent sale in which the seller is paid with future profits is not a license because the seller does not retain "control over the patents or their use or disposal, or any power to interfere with the management of the business growing out of their ownership."  *Kronos v. AVX Corporation,* 1992 WL 300812 (W.D.N.Y 1992); *see also Rude v. Wescott*, 130 U.S. 152 (1889); *SGS-Thomson Microelectronic, Inc. v. International Rectifier Corp.,* 31 F.3d 1177 (Fed.Cir. 1994); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 994 F.2d 870 (Fed.Cir. 1991); *Kim*

---

[1] Classen defines "commercialization" as selling or licensing.  Plaint. Opp. to Elan's Mot. for Summary Judgment, p. 13.

*v. Quigg,* 718 F.Supp. 1280 (E.D.Va. 1989); *Proctor & Gamble Co. v. Kimberly Clark Corp.,* 684 F.Supp. 1403 (N.D.TX. 1987).

Elan has offered uncontradicted evidence that it sold all rights to Skelaxin in May 2003.  Although King will share future profits with Elan, this arrangement constitutes a sale—not a license.  Elan's commercialization of Skelaxin and, therefore, any infringement of the 674 patent, ended at the sale in May 2003.

As Elan's motion for summary judgment would not be dispositive of the entire 674 patent claim, the motion will be denied.[2]

B.  Infringement of the 472 Patent

Elan argues that it could not have infringed the 472 patent because the patent was issued more than a month after Elan sold its rights to Skelaxin.  Classen argues that 35 U.S.C. § 154 allows Classen to collect damages for patent infringement from the date the 472 patent was published (September 6, 2001) to the date the patent was issued (June 24, 2003).  Elan argues in response that: 1) Classen did not plead infringement under § 154(d) and cannot amend its complaint; and 2) Elan could not have violated § 154(d) because it did not have actual notice of the

---

[2] Elan may be able to limit proof of Classen's damages on its 674 patent to the period ending in May 2003.  *See* Rule 56(d).

published patent application.

When a patent is issued, § 154(d) allows a patent holder to recover royalties for infringement that occurred from publication of the patent application to issuance of the patent if the alleged infringer had "actual notice" of the application.  35 U.S.C. § 154(d); *Plastic Recovery Technologies v. Container Components,* 2004 WL 2583951, slip op. (N.D.Ill. 2004).

Although Classen does not claim a violation of § 154(d) in its complaint, Classen describes the nature of the suit as "a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code." Complaint, ¶ 1.  Section 154(d) provides that "a patent shall include the right to obtain a reasonable royalty" for infringement during the provisional period.  Therefore, § 154(d) expands the scope of patent infringement rather than creating a new cause of action.  As Classen has pled that Elan infringed the 472 patent, that claim for infringement includes the right to obtain royalties for infringement from the time the patent application was published.  Therefore, Classen need not amend its complaint to include a claim under § 154(d).

However, Elan must have had "actual notice of the published patent application." 35 U.S.C. § 154(d)(1)(B).  Classen contends that Elan had "actual notice" because: 1) Elan employees attended a conference at which they were notified of the Classen patent

application in November 2001; 2) Classen sent a letter to Elan
notifying Elan of the 472 patent application in January 2002; and
3) Classen and Elan discussed licensing Classen patents between
January and June 2002.   Elan argues that it had no notice of the
patent application because Classen failed to make a specific
charge of infringement by a specific Elan product.

What constitutes "actual notice" is unclear under §
154(d)(1)(B) and the case law.   In one of the few cases
construing § 154(d)(1)(B), the Federal Circuit in *Stephens v.
Tech International* held that a patentee had provided "section 154
notice" when the patentee sent the defendant a letter claiming
that one of the defendant's products infringed several claims of
the patentee's pending patent application.   393 F.3d 1269, 1275
(Fed Cir. 2004).   The *Stephens* court held that, "the letter
represented [the plaintiff's] adherence to section 154's
requirement that [the defendant] be placed on notice of
Spectrum's future right to obtain royalties if a patent issued."
*Id* at 1276.

In addition, the Federal Circuit, in construing the notice
requirement of 35 U.S.C. § 287(a), a damages provision for
certain patent infringement, has held that "notice of
infringement" requires the "affirmative communication of a
specific charge of infringement by a specific product or device."
*Amsted Industries Inc. v. Buckeye Steel Castings Company,* 24 F.3d

12

178 (Fed cir. 1994); *see also Lans v. Digital Equipment Corp.,* 252 F.3d 1320 (Fed. Cir. 2001); *Gart v. Logitech, Inc.,* 254 F.3d 1334 (Fed. Cir. 2001).

Classen has offered evidence that Classen notified Elan of the 472 patent application soon after it was published in September 2001. In November 2001, Elan employees attended the Pharmaceutical Product Lifecycle Strategies workshop at which Dr. Classen presented, and at which the Elan employees received handouts that contained, information about the 472 application. Classen Affidavit, ¶¶ 6-7; Plaint. Opp. to Elan's Mot. for Summary Judgment, Ex. E, F, M. On January 4, 2002 Elan employees and Classen discussed licensing the Classen patents. Plaint. Resp. to Elan's First Set of Interrogatories, No. 4. On January 11, 2002 Classen and Elan held a conference call regarding licensing of the Classen patents and on January 14, 2002, Classen sent a proposed licensing agreement that offered the 472 patent application as a potential license. Classen Affidavit, ¶¶ 8-10; Plaint. Opp. to Elan's Mot. for Summary Judgment, Ex. K. From January to June 2002 Classen and Elan continued to discuss licensing the Classen patents. Classen Affidavit, ¶¶ 8,10.

In its efforts to license what later became the 472 patent, Classen clearly took affirmative steps to inform Elan of the existence of the 472 patent application. Given that evidence, Elan's motion for summary judgment on claims relating to the 472

patent will be denied.

IV.  Elan's Motion to Amend its Complaint and to Join Dr. Classen

Pursuant to Rule 13(h) and 20(a), Elan has moved to amend its Answer, Affirmative Defenses, and Counterclaims to include additional counterclaims of defamation, false light invasion of privacy, and unfair competition against Classen Immunotherapies and Dr. Classen in his personal capacity.  Elan has also moved to file a supplemental reply in support of its motion to amend its Answer.

Pursuant to Rule 15(a), Elan has moved to join Dr. Classen as a counterclaim defendant.

A.  Motion to File a Supplemental Reply

Elan has moved for leave to file a supplemental reply to its Motion to Amend its Answer, Affirmative Defenses, and Counterclaims.  As the motion is unopposed, it will be granted.

B.  Motion to Amend Elan's Answer, Affirmative Defenses, and Counterclaims

Motions to amend are to be liberally granted in the absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Harless v. CSX Hotels,* 389

F.3d 444 (4th Cir. 2004); *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987); *Davis v. Piper Aircraft,* 615 F.2d 606 (4th Cir. 1980); *Openshaw v. Cohen, Klingenstein & Marks*, 320 F.Supp.2d 357 (D.Md. 2004).

Classen argues that the Motion to Amend should be denied as futile because: 1) Elan has failed to adequately plead its counterclaims; 2) Classen's statements are protected by the litigation privilege; and 3) Classen has the right to notify others of its patent rights.

Determinations of futility under Rule 15(a) are governed by the standard for motions to dismiss. *Openshaw,* 320 F.Supp.2d 357 at 359; *see also Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Elan would not be permitted to amend its Complaint if the proposed Second Amended Complaint would not survive a motion to dismiss.

Under Rule 12(b)(6) a claim may be dismissed if the Plaintiff has failed to state a claim upon which relief can be granted. A motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et. al.*, 7 F.3d 1130, 1134 (4th Cir. 1993). All allegations are treated as true, and the complaint is viewed in

the light most favorable to the plaintiff.  *Chao v. Rivendell Woods,* 415 F.3d 342, 346 (4th Cir. 2005); *De'Lonta v. Angelone,* 330 F.3d 630, 633 (4th Cir. 2003); *Mylan,* 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)).  The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id*.


1.  Failure to Adequately Plead the Counterclaim

Classen argues that Elan has failed to adequately plead its claims for defamation, false light invasion of privacy and unfair competition.

However, Rule 8(a)(2) requires only that pleadings provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

> This requirement is by no means onerous; instead, it is designed to ensure that the complaint will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests...Under this pleading system, a plaintiff must only set forth facts sufficient to allege each element of his claim.

*Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005) (internal citations omitted).

a.  Defamation

16

To recover for defamation under Maryland law, a plaintiff must establish that: 1) the defendant made a defamatory statement regarding the plaintiff to a third person; 2) the statement was false; 3) the defendant was legally at fault in making the statement; and 4) the plaintiff suffered harm thereby.  *Holt v. Camus,* 128 F.Supp.2d 812 (D.Md. 1999).  The Maryland Court of Appeals has defined a defamatory statement as one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person. *Batson v. Shiflett*, 325 Md. 684, 722-723 (Md. 1992)*.*

Elan has claimed, *inter alia,* that: 1) Classen made a defamatory statement accusing Elan of patent infringement in a press release[3]; 2) the allegations of patent infringement are false; 3) Classen made the statement with malice or at least negligence; and 4) Elan's business reputation was harmed as a result.  Taking these allegations to be true, Elan has pled defamation under Maryland law.

   b.  False Light Invasion of Privacy

To make a claim for false light invasion of privacy Elan must establish: (1) it was exposed to publicity that portrayed

---

   [3]Elan has attached to its counterclaim a press release about this case in which Dr. Classen accuses Elan of infringing Classen's patents in the development of Skelaxin.

Elan in a false light; (2) a reasonable person would find the publicity highly offense; and (3) the defendant had knowledge of the falsity of the publicity or acted in reckless disregard of the truth or falsity of the publicized matter.  *Holt,* 128 F.Supp.2d 812.

As Elan has alleged in its counterclaim that Classen falsely accused Elan of patent infringement in a press release and that Classen acted with knowledge of its falsity or with reckless disregard of its truth or falsity, Elan has pled false light invasion of privacy.

### c.  Unfair Competition

Classen contends that Elan has failed to plead unfair competition because the allegedly defamatory statements are true. As the Court must accept Elan's allegations as true, Elan has adequately pled defamation and unfair competition.

### 2.  Litigation Privilege

Classen has argued that Elan's counterclaims are barred by Maryland's litigation privilege.  Elan responds that the privilege does not apply to statements made outside the judicial process.

Statements made in the course of a judicial proceeding are privileged under Maryland law.  *Holt,* 128 F.Supp.2d at 815.

Statements uttered in the course of a trial or contained in

pleadings, affidavits, depositions and other documents
directly related to the case partake of this privilege; they
cannot serve as the basis for an action for defamation.

*Id.* However, this privilege does not attach to "extrajudicial

publications, related to the litigation, which are made outside

the purview of the judicial proceeding." *Kennedy v. Cannon,* 229

Md. 92, 98 (Md. 1962). As Elan alleges that Classen defamed Elan

in a press release, the litigation privilege does not require

dismissal of the defamation claims.


    3.   Patent Owner Privilege

    Classen additionally argues that Classen has a privileged

right to notify the public of its patent rights and, therefore,

Classen's statements cannot be the grounds for a claim of

defamation. The authorities Classen cites, however, discuss

patent holders' right to inform the public of the existence of

their patents or to inform potential infringers of their

potential liability. *Golan v. Pingel Enterprises,* 310 F.3d 1360

(Fed. Cir. 2002); *Zenith Electronics Corporation,* 182 F.3d 1840

(Fed. Cir. 1999); *Hunter Douglas Inc. v. Harmonic Design,* 153

F.3d 1318 (Fed. Cir. 1998). Classen provides no support for an

unrestricted right to issue press releases alleging patent

infringement.

    A patent owner's privileged right to publicize its patent

rights assumes good faith. *Golan,* 310 F.3d at 1371. If, Elan

has alleged, Classen acted with malice in issuing the press
release, Classen's press release would not be privileged.

    4.  Conclusion

    As Elan's counterclaims are adequately pled and not barred
by privilege, the counterclaims are not futile.  Accordingly,
Elan's motion to amend its Answer, Affirmative Defenses, and
Counterclaims will be granted.


C.  Elan's Motion to Join Dr. Classen

    Pursuant to Rule 20(a), Elan has moved to join Dr. Classen
as a defendant.  As there are common questions of law and fact
among the claims against Dr. Classen and Classen Immunotherapies
and because the motion is unopposed, Elan's motion to join Dr.
Classen as a defendant will be granted.


V.  Elan's Motion to Bifurcate

    Elan has moved to bifurcate liability issues from damages
and willfulness issues pursuant to Rule 42(b).  Elan contends
that bifurcation is warranted to further judicial efficiency,
because the issues involved are complex, and because liability
and damages issues are distinct and unrelated.  Classen has
opposed the motion, arguing that the issues are related,
bifurcation would waste judicial resources and Classen would be
prejudiced by  two trials.

Under Rule 42(b) the Court may bifurcate a trial "in furtherance of convenience or to avoid prejudice." As Elan has not argued that it will be prejudiced by a trial that encompasses issues of liability and damages, the only consideration is whether judicial economy would be furthered by bifurcation.

Elan primarily contends that bifurcation would add to the efficiency and speed of discovery. As discovery is set to close on December 16, 2005, bifurcation would not further judicial economy.

As to Elan's contention that bifurcation would aid in the presentation of issues during trial, the Court is confident that the jury will be able to decide on issues of liability and damages. Accordingly, Elan's motion to bifurcate issues of liability and damages will be denied.


<u>December 6, 2005</u>                    _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge